**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| DAVID COULSON, individually and on behalf of all others similarly situated, | Case No. 1:26-cv-461 |
| 57 Mark Ave, Wells, Maine, 04090. | **CLASS ACTION** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| INSIGHTIN HEALTH, INC. & MARTIN'S POINT HEALTH CARE, | |
| 333 W. Ostend Street, Suite 100, Baltimore, Maryland, 21230, and 331 Veranda Street, P.O. Box 9746, Portland, Maine, 04014. | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

Plaintiff David Coulson ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members"), brings this Class Action Complaint against Defendants Insightin Health, Inc. ("Insightin") & Martin's Point Health Care ("Martin's Point") (collectively, "Defendants"), alleging as follows based upon personal knowledge, information and belief, and investigation of counsel.

**NATURE OF THE ACTION**

1.    Plaintiff brings this class action against Defendants for their failure to properly secure and safeguard Plaintiff's and Class Members' sensitive protected health information ("PHI") and personally identifying information ("PII") (collectively, "Private Information"), and the preventable data breach of Defendants' inadequately protected computer systems.

2.    Between September 17, and September 23, 2025, cybercriminals hacked into Defendants' computer network systems and stole Plaintiff's and Class Members' sensitive,

1

confidential Private Information stored therein, including their names, dates of birth, and unique identifier assigned by health insurance providers, causing widespread injuries to Plaintiff and Class Members (the "Data Breach").[1]

3.    Defendant Insightin is a healthcare member engagement platform company providing their platforms to healthcare providers.[2]

4.    Defendant Martin's Point is a not-for-profit healthcare organization providing healthcare services throughout the state of Maine.[3]

5.    Plaintiff and Class Members are current and former patients of Defendants who, in order to obtain healthcare services from Defendants, were and are required to entrust Defendants with their sensitive, non-public Private Information. Defendants could not perform their operations or provide their services without collecting Plaintiff's and Class Members' Private Information and retains it for many years, at least, even after the patient-provider relationship has ended.

6.    Defendants breached their duties owed to Plaintiff and Class Members by failing to safeguard the Private Information they collected and maintained, including by failing to implement industry standards for data security to protect against cyberattacks, which failures allowed criminal hackers to access and steal patients' Private Information from Defendants' care.

7.    According to Defendant Insightin's Notice Of Data Privacy Event ("Notice"), between September 17, and September 23, 2025, hackers targeted and accessed Defendants' network systems and stole Plaintiff's and Class Members' sensitive, confidential Private Information stored therein, causing widespread injuries to Plaintiff and Class Members.[4]

8.    Defendants failed to adequately protect Plaintiff's and Class Members' Private

---

[1] *See* Insightin's Notice, https://insightinhealth.com/notice-of-data-event/ (last visited Feb. 3, 2026).
[2] https://insightinhealth.com/company/ (last visited Feb. 3, 2026).
[3] https://martinspoint.org/ (last visited Feb. 3, 2026).
[4] https://insightinhealth.com/notice-of-data-event/ (last visited Feb. 3, 2026).

Information—and failed to even encrypt or redact this highly sensitive data. This unencrypted, unredacted Private Information was compromised due to Defendants' negligent and/or careless acts and omissions and their utter failure to protect their patients' sensitive health details.

9.      Defendants maintained the Private Information in a reckless manner. In particular, Private Information was maintained on and/or accessible from Defendants' network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendants, and thus, Defendants knew that failing to take reasonable steps to secure the Private Information left it in a dangerous condition.

10.     Hackers targeted and obtained Plaintiff's and Class Members' Private Information from Defendants because of the data's value in exploiting and stealing identities. As a direct and proximate result of Defendants' inadequate data security and breaches of their duties to handle Private Information with reasonable care, Plaintiff s' and Class Members' Private Information has been accessed by hackers and exposed to an untold number of unauthorized individuals. The present and continuing risk to Plaintiff and Class Members as victims of the Data Breach will remain for their respective lifetimes.

11.     As a result of the Data Breach, Plaintiff and Class Members suffered concrete injuries in fact, including but not limited to (a) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (c) actual identity theft and fraud; (d) financial costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) deprivation of value of their Private Information; (g) loss of privacy; (h) emotional distress including anxiety and stress in with dealing with the Data Breach; and (i) the

continued risk to their sensitive Private Information, which remains in Defendants' possession and subject to further breaches, so long as Defendants fail to undertake appropriate and adequate measures to protect the patient data they collects and maintains.

12.    To recover from Defendants for these harms, Plaintiff, on his own behalf and on behalf of the Class as defined herein, brings claims for negligence/negligence *per se*, breach of implied contract, invasion of privacy, and unjust enrichment, to address Defendants' inadequate safeguarding of Plaintiff's and Class Members' Private Information in their care.

13.    Plaintiff and Class Members seek damages and equitable/injunctive relief requiring Defendants to (a) disclose the full nature of the Data Breach and types of Private Information exposed; (b) implement data security practices to guard against future breaches; and (c) provide, at Defendants' expense, all Data Breach victims with lifetime identity theft protection services.

## PARTIES

14.    Plaintiff is an adult individual who at all relevant times has been a citizen and resident of Wells, Maine, where he intends to remain.

15.    Defendant Insightin Health, Inc. is a Maryland corporation with its principal place of business located at 333 W. Ostend Street, Suite 100, Baltimore, Maryland 21230.

16.    Defendant Martin's Point Health Care is a corporation with its principal place of business located at 331 Veranda Street, P.O. Box 9746, Portland, Maine 04014.

## JURISDICTION AND VENUE

17.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom including Plaintiff have different citizenship from Defendants. Thus, minimal diversity

exists under 28 U.S.C. § 1332(d)(2)(A).

18.    This Court has personal jurisdiction over Defendant Insightin because Insightin's principal place of business is in Maryland and Insightin engaged in substantial activity in Maryland.

19.    This Court has personal jurisdiction over Defendant Martin's Point Health Care because it maintained Plaintiff's Private Information in this District and conducts substantial business in this District.

20.    Venue is proper in the Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District, Insightin maintains substantial operations in this District, the conduct relevant to this action occurred in part within this District, and Defendants have harmed Class Members in this District.

## FACTUAL BACKGROUND

### A. Defendants Owed Duties to Adopt Reasonable Data Security Measures for Private Information they Collected and Maintained.

21.    Defendant Insightin is a healthcare member engagement platform company providing their platforms to healthcare providers.[5] Defendant Martin's Point is a not-for-profit healthcare organization providing healthcare services throughout the state of Maine.[6] On information and belief, Defendant Martin's Point used Defendant Insightin as a vendor for electronic health records.

22.    Plaintiff and Class Members are current and former patients who received medical services from Defendants prior to September 2025. As a condition and in exchange for receiving healthcare services from Defendants, Defendants' patients, including Plaintiff and Class Members,

---

[5] https://insightinhealth.com/company/ (last visited Feb. 3, 2026).
[6] https://martinspoint.org/Meet-Martins-Point (last visited Feb. 3, 2026).

were required to entrust Defendants with highly sensitive Private Information, including their names, dates of birth, Social Security numbers, and medical records and data.

23.     In exchange for receiving Plaintiff's and Class Members' Private Information, Defendants promised to safeguard the sensitive, confidential data and use it only for authorized and legitimate purposes, and to delete such information from their systems once there was no longer a need to maintain it.

24.     By obtaining, using, and benefiting from Plaintiff's and Class Members' Private Information, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting that Private Information from unauthorized access and disclosure.

25.     Defendants had and have a duty to adopt reasonable measures to keep Plaintiff's and Class Members' Private Information confidential and protected from involuntary disclosure to third parties, and to audit, monitor, and verify the integrity of their IT network systems.

26.     Additionally, Defendants had and has obligations created by the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45 ("FTC Act"), the Health Insurance Portability and Accountability Act ("HIPAA"), common law, contract, industry standards, and representations made to Plaintiff and Class Members, to keep their Private Information confidential and protected from unauthorized disclosure. Defendants failed to do so.

**B. Defendants Failed to Adequately Safeguard Plaintiff's and Class Member's Private Information, Causing the Data Breach.**

27.     In or around January 2026, Defendant Insightin posted a Notice:

> In September 2025, Insightin identified suspicious activity within its network after an unauthorized actor gained access by exploiting a previously unknown vulnerability in a third-party application used by Insightin. In response, we launched an investigation into the nature and scope of the situation, supported by third-party forensic specialists.

The investigation determined that certain files stored on a limited number of Insightin servers were accessed or copied by an unauthorized party between September 17, 2025, and September 23, 2025. As a result, Insightin took steps to contain the issue and began a comprehensive review of these files to determine whether sensitive information may be impacted, and to whom that information related. This event never affected our ability to serve our customers.

Through this review, Insightin determined that information which may have been involved included data related to certain services it provides to a subset of its health care customers. Although the information varied by individual, it may have included member name, date of birth, and a non-unique identifier assigned by health insurance providers, and on a limited circumstance, contract numbers and Medicare Beneficiary Identifiers issued by the Centers for Medicare and Medicaid as well as information associated with attributed providers may also have been exposed  Please note that not all data elements may have been involved for all individuals.[7]

28.    Defendants' purported 'disclosure' to Data Breach victims amounts to no real disclosure at all, as it fails to inform Plaintiff and Class Members of the Data Breach's critical facts with any degree of specificity. Without these details, Plaintiff's and Class Members' ability to mitigate the harms resulting from the Data Breach was severely diminished.

29.    As the Data Breach evidences, Defendants did not use reasonable security procedures and practices appropriate to the nature of the sensitive Private Information they collected and maintained from Plaintiff and Class Members, such as encrypting the information or deleting it when they no longer needed, training employees to recognize and guard against cyberattacks, and implementing appropriate logging and alerting measures to promptly detect unauthorized access if it occurs. These failures by Defendants allowed and caused cybercriminals to target Defendants' electronic heath record vendor's network, carry out the Data Breach, continue accessing Defendants' systems for days even after detection, and extract unencrypted files with Plaintiff and Class Member's Private Information.

---

[7] https://insightinhealth.com/notice-of-data-event/ (last visited Feb. 3, 2026).

30.    Defendants could have prevented this Data Breach by properly securing and encrypting the files and file servers containing Plaintiff's and Class Members' Private Information, but failed to do so, causing the Data Breach.

31.    Defendants' tortious conduct and breach of contractual obligations, as detailed herein, are evidenced by their failure to recognize the Data Breach until cybercriminals had already accessed Plaintiff's and Class Members' Private Information, meaning Defendants had no effective means in place to ensure that cyberattacks were detected and prevented.

**C. Defendants Knew of the Risk of a Cyberattack because Healthcare Providers in Possession of Private Information are Particularly Suspectable.**

32.    Defendants' negligence in failing to safeguard Plaintiff's and Class Members' Private Information is exacerbated by the repeated warnings and alerts directed to protecting and securing such data.

33.    Private Information of the kind accessed in the Data Breach is of great value to hackers and cybercriminals as it can be used for a variety of unlawful and nefarious purposes, including ransomware, fraudulent misuse, and sale on the dark web.

34.    Private Information can also be used to distinguish, identify, or trace an individual's identity, such as their name, Social Security number, and financial records. This may be accomplished alone or in combination with other PII or PHI connected or linked to an individual, such as his or her birthdate, birthplace, and mother's maiden name.

35.    Data thieves regularly target entities in the healthcare industry like Defendants due to the highly sensitive information that such entities maintain. Defendants knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

36.    Defendants' data security obligations were particularly important given the

substantial increase, preceding the date of the subject Data Breach, in cyberattacks and/or data breaches targeting healthcare entities like Defendants that collect and store PHI.

37.    For example, of the 1,862 data breaches recorded in 2021, 330 of them, or 17.7%, were in the healthcare industry.[8] Entities in custody of PHI, like Defendants, reported the largest number of data breaches among all measured sectors in 2022, with the highest rate of exposure per breach.[9] Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that victims were often forced to pay out of pocket costs for healthcare they did not receive in order to restore coverage.[10] Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event, while 40 percent of the patients were never able to resolve their identity theft at all. In other words, data breaches and identity theft have a crippling effect on individuals.[11]

38.    Given the nature of the Data Breach, it was foreseeable that Plaintiff's and Class Members' Private Information compromised therein would be targeted by hackers and cybercriminals for use in variety of different injurious ways. Indeed, the cybercriminals who possess Plaintiff's and Class Members' Private Information can easily obtain their tax returns or open fraudulent credit card accounts in Plaintiff's and Class Members' names.

39.    Defendants were, or should have been, fully aware of the unique type and the significant volume of data on their network server(s), amounting to hundreds of thousands of

---

[8] 2021 Data Breach Annual Report (ITRC, Jan. 2022), http://notified.idtheftcenter.org/s/, at 6.
[9] *See* Identity Theft Resource Center, 2022 Annual Data Breach Report, http://www.idtheftcenter.org/publication/2022-data-breach-report/ (last visited Feb. 4, 2026).
[10] *See* Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), http://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last visited Feb. 4, 2026).
[11] *Id.*

individuals' detailed Private Information, and, thus, the significant number of individuals who would be harmed by the unauthorized exposure of that unencrypted data.

40.     Plaintiff and Class Members were the foreseeable and probable victims of Defendants' inadequate security practices and procedures. Defendants knew or should have known of the inherent risks in collecting and storing Private Information and the critical importance of providing adequate security for that information.

41.     The breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Plaintiff and Class Members especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud, and the like.

**D.  Defendants were Required, but Failed to Comply with FTC Rules and Guidance.**

42.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

43.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses like Defendants. These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[12]

44.     The FTC's guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating

---

[12] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (2016),http://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Feb. 4, 2026).

someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[13]

45.    The FTC further recommends that companies not maintain confidential personal information, like Private Information, longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

46.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect third parties' confidential data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures business like Defendants must undertake to meet their data security obligations.

47.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect sensitive personal information, like Private Information. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

48.    The FTC has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The

---

[13] *Id.*

larger the data set, the greater potential for analysis and profit."[14]

49.    Defendants failed to properly implement basic data security practices, in violation of their duties under the FTC Act. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

**E.  Defendants Were Required but Failed to Comply with HIPAA.**

50.    Defendants are covered businesses under HIPAA (45 C.F.R. § 160.102) and are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E; and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and C.

51.    Defendants are further subject to the Health Information Technology Act ("HITECH")'s rules for safeguarding electronic forms of medical information. *See* 42 U.S.C. §17921; 45 C.F.R. § 160.103.

52.    HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting Private Information that is kept or transferred in electronic form.

53.    HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302. "Electronic protected health information" is "individually identifiable health information . . . that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

54.    HIPAA's Security Rule required and requires that Defendants do the following:

---

[14] Statement of FTC Commissioner Pamela Jones Harbour (Remarks Before FTC Exploring Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf.

    a.  Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

    b.  Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

    c.  Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

    d.  Ensure compliance by their workforce.

55.    HIPAA also requires Defendants to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Defendants is required under HIPAA to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. §164.312(a)(1).

56.    HIPAA and HITECH also require procedures to prevent, detect, contain, and correct data security violations and disclosures of Private Information that are reasonably anticipated but not permitted by privacy rules. *See* 45 C.F.R. § 164.306(a)(1), (a)(3).

57.    HIPAA further requires a covered entity like Defendants to have and apply appropriate sanctions against members of their workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. See 45 C.F.R. § 164.530(e).

58.    HIPAA further requires a covered entity like Defendants to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of PHI in violation of their policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by

the covered entity or their business associate. *See* 45 C.F.R. § 164.530(f).

59.    HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." US Department of Health & Human Services, Security Rule Guidance Material.[15] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology, which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." US Department of Health & Human Services, Guidance on Risk Analysis.[16]

60.    As alleged in this Complaint, Defendants failed to comply with HIPAA and HITECH. It failed to maintain adequate security practices, systems, and protocols to prevent data loss, failed to mitigate the risks of a data breach, and failed to ensure the confidentiality and protection of Plaintiff's and Class Members' Private Information, including PHI.

**F.  Defendants Failed to Comply with Industry Standards.**

61.    A number of industry and national best practices have been published and are widely used as a go-to resource when developing an institution's cybersecurity standards.

62.    The Center for Internet Security's (CIS) Critical Security Controls (CSC) recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and

---

[15] http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html (last visited Feb. 3, 2026).
[16] *Id.*

Control of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management, Application Software Security, Incident Response Management, and Penetration Testing.[17]

63.    The Cybersecurity & Infrastructure Security Agency makes specific recommendations to organizations to guard against cybersecurity attacks, including (a) reducing the likelihood of a damaging cyber intrusion by validating that "remote access to the organization's network and privileged or administrative access requires multi-factor authentication, [e]nsur[ing] that software is up to date, prioritizing updates that address known exploited vulnerabilities identified by CISA[,] [c]onfirm[ing] that the organization's IT personnel have disabled all ports and protocols that are not essential for business purposes," and other steps; (b) taking steps to quickly detect a potential intrusion, including "[e]nsur[ing] that cybersecurity/IT personnel are focused on identifying and quickly assessing any unexpected or unusual network behavior [and] [e]nabl[ing] logging in order to better investigate issues or events[;] [c]onfirm[ing] that the organization's entire network is protected by antivirus/antimalware software and that signatures in these tools are updated," and (c) "[e]nsur[ing] that the organization is prepared to respond if an intrusion occurs," and other steps.[18]

64.    Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including by failing to meet the minimum standards of both the NIST

---

[17] *See* Rapid7, "CIS Top 18 Critical Security Controls Solutions," available at
http://www.rapid7.com/solutions/compliance/critical-controls/ (last visited Feb. 3, 2026).
[18] Cybersecurity & Infrastructure Security Agency, "Shields Up: Guidance for Organizations," available at
http://www.cisa.gov/shields-guidance-organizations (last visited Feb. 3, 2026).

Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and by failing to comply with other industry standards for protecting Plaintiff's and Class Members' Private Information, resulting in the Data Breach.

### G. Defendants Owed Plaintiff and Class Members a Common Law Duty to Safeguard their Private Information.

65.     In addition to their obligations under federal and state laws, Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants' duty owed to Plaintiff and Class Members obligated it to provide reasonable data security, including consistency with industry standards and requirements, and to ensure that their computer systems, networks, and protocols adequately protected Plaintiff's and Class Members' Private Information.

66.     Defendants owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in their possession, including adequately training their employees and others who accessed Private Information within their computer systems on how to adequately protect Private Information.

67.     Defendants owed a duty to Plaintiff and Class Members to implement processes that would detect a compromise of Private Information in a timely manner. Defendants owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion. Defendants owed a duty to Plaintiff and Class Members to disclose in a timely and accurate manner when and how the Data Breach occurred. Defendants owed a duty of care to

16

Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

68.     Defendants failed to take the necessary precautions required to safeguard and protect Plaintiff's and Class Members' Private Information from unauthorized disclosure. Defendants' actions and omissions represent a flagrant disregard of Plaintiff's and Class Members' rights.

**H. Plaintiff and Class Members Suffered Common Injuries and Damages due to Defendants' Conduct.**

69.     Defendants' failure to implement or maintain adequate data security measures for Plaintiff's and Class Members' Private Information directly and proximately caused injuries to Plaintiff and Class Members by the resulting disclosure of their Private Information in the Data Breach.

70.     The ramifications of Defendants' failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen fraudulent use of that information and damage to victims may continue for years. Plaintiff and Class Members are also at a continued risk because their Private remains in Defendants' systems, which have already been shown to be susceptible to compromise and attack and are subject to further attack so long as Defendants fails to undertake the necessary and appropriate security and training measures to protect their patients' and/or clients' Private Information.

71.     As a result of Defendants' ineffective and inadequate data security practices, the resulting Data Breach, and the foreseeable consequences of their Private Information ending up in criminals' possession, the risk of identity theft to Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including, without limitation, (a) invasion of privacy; (b) financial costs incurred mitigating the

materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (d) financial costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) deprivation of value of their Private Information; (g) loss of the benefit of their bargain with Defendants; (h) emotional distress including anxiety and stress in dealing with the Data Breach's aftermath; and (i) the continued risk to their sensitive Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information they collect and maintain.

### *The Risk of Identity Theft to Plaintiff and Class Members is Present and Ongoing*

72.    Plaintiff and Class Members are at a heightened risk of identity theft for years to come because of the Data Breach.

73.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[19] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[20]

74.    The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal individuals' personal data to monetize the information. Criminals monetize the data by selling the stolen information on the internet black market to other criminals who then utilize the information to commit a variety of identity theft related crimes

---

[19] 17 C.F.R. § 248.201 (2013).
[20] *Id.*

discussed below.

75.    The dark web is an unindexed layer of the internet that requires special software or authentication to access.[21] Criminals in particular favor the dark web as it offers a degree of anonymity to visitors and website publishers. Unlike the traditional or "surface" web, dark web users need to know the web address of the website they wish to visit in advance. For example, on the surface web, the CIA's web address is cia.gov, but on the dark web the CIA's web address is ciadotgov4sjwlzihbbgxnqg3xiyrg7so2r2o3lt5wz5ypk4sxyjstad.onion.[22] This prevents dark web marketplaces from being easily monitored by authorities or accessed by those not in the know.

76.    The unencrypted Private Information of Plaintiff and Class Members has already been published and will end up for further sale on the dark web because that is the *modus operandi* of hackers. Additionally, unencrypted and detailed Private Information may fall into the hands of companies that use it for targeted marketing without the consent of Plaintiff and Class Members. Unauthorized individuals can easily access Plaintiff's and Class Members' Private Information.

77.    For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data breaches are often the starting point for these additional targeted attacks on the victims.

78.    Identity thieves can also use an individual's personal data and Private Information

---

[21] *What Is the Dark Web?*, Experian, available at http://www.experian.com/blogs/ask-experian/what-is-the-dark-web/.
[22] *Id.*

to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's information, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant issued in the victim's name.[23]

79.     "Actors buying and selling PII and PHI from healthcare institutions and providers in underground marketplaces is very common and will almost certainly remain so due to this data's utility in a wide variety of malicious activity ranging from identity theft and financial fraud to crafting of bespoke phishing lures."[24]

80.     "Medical identity theft is a great concern not only because of its rapid growth rate, but because it is the most expensive and time consuming to resolve of all types of identity theft. Additionally, medical identity theft is very difficult to detect which makes this form of fraud extremely dangerous."[25]

81.     The reality is that cybercriminals seek nefarious outcomes from a data breach" and "stolen health data can be used to carry out a variety of crimes."[26] One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[27] With "Fullz" packages, cyber-criminals can cross-reference two sources of

---

[23] *Identity Theft and Your Social Security Number*, Social Security Administration, 1 (2018), http://www.ssa.gov/pubs/EN-05-10064.pdf.

[24] *Id.*

[25] http://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf.

[26] http://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon.

[27] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), http://krebsonsecuritv.com/2014/09/ medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm (last visited Feb. 3, 2026).

Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals.

82.     The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. Then, this comprehensive dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

83.     That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that their stolen Private Information is being misused, and that such misuse is traceable to the Data Breach.

### *Plaintiff's Experience*

84.     Plaintiff is a former patient of Martin's Point, having obtained healthcare services from Martin's Point prior to the Data Breach.

85.     As a condition of receiving healthcare services from Martin's Point, Plaintiff was required to entrust Defendants with his Private Information, including but not limited to his name, date of birth, and health insurance information.

86.     Plaintiff greatly values his privacy and is very careful about sharing his sensitive Private Information. Plaintiff diligently protects his Private Information and stores any documents

containing Private Information in a safe and secure location. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff would not have provided his Private Information to Defendants had he known it would be kept using inadequate data security and vulnerable to a cyberattack.

87.    At the time of the Data Breach—between September 17, and September 23, 2025—Defendants retained Plaintiff's Private Information in their network systems with inadequate data security, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

88.    Plaintiff further believes his Private Information stolen in the Data Breach, and that of Class Members, was and will be sold and further disseminated on the dark web as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type. The risk of identity theft is thus impending and has materialized.

89.    Plaintiff has made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud, valuable time he otherwise would have spent on other activities.

90.    Plaintiff further anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. Due to the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

91.    The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress about the genuine and imminent risk of identity theft facing her, and his sensitive data's publication on the dark web, which is compounded by the fact that Defendants has still not fully informed him of key

details about the Data Breach's occurrence or the information stolen. Moreover, following the Data Breach, Plaintiff has experienced a spike in suspicious spam calls and texts using his Private Information, and believes this be an attempt to secure additional Private Information from him.

92.     Due to Defendants' inadequate data security practices, the resulting Data Breach, and the foreseeable consequence of Plaintiff's confidential Private Information ending up in the hands of cybercriminals, Plaintiff has suffered and will continue to suffer numerous, substantial injuries including but not limited to (a) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (c) financial costs incurred due to actual identity theft; (d) loss of time incurred due to actual identity theft; (e) deprivation of value of his Private Information; (f) invasion of privacy; and (g) the continued risk to his Private Information, which remains backed up in Defendants' possession and subject to further breaches, so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information they collect and maintain.

## CLASS ALLEGATIONS

93.     Plaintiff brings this class action under the Florida Rules of Civil Procedure 1.220(a) and (b)(3) individually and on behalf of all members of the following class:

> All individuals residing in the United States whose Private Information may have been compromised in the Data Breach (the "Class").

94.     Excluded from the Class are Defendants' officers and directors, and any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

95.     Plaintiff hereby reserves the right to amend or modify the Class definition with

greater specificity or division after having had an opportunity to conduct discovery.

96.    <u>Numerosity</u>. The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, Defendants are aware of the number of affected individuals.

97.    <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.  Whether Defendants unlawfully used, maintained, or disclosed Private Information;

b.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.  Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.  Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

e.  Whether Defendants owed a duty to Class Members to safeguard their Private Information;

f.  Whether Defendants breached their duties to Class Members to safeguard their Private Information;

g.  Whether computer hackers obtained Class Members' Private Information in the Data Breach;

h.  Whether Defendants knew or should have known that their data security systems

and monitoring processes were deficient;

i.  Whether Class Members suffered legally cognizable damages as a result of Defendants' misconduct;

j.  Whether Defendants' conduct was negligent;

k.  Whether Defendants breached implied contracts for adequate data security with Class Members;

l.  Whether Defendants were unjustly enriched by retention of the monetary benefits conferred on them by Class Members; and

m.  Whether Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

98.    Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach.

99.    Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

100.    Predominance. Defendants have engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' Private Information was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

101.    Superiority. A class action is superior to other available methods for the fair and

efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial and party resources, and protects the rights of each Class Member.

102.    Defendants have acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and declaratory relief are appropriate on a class-wide basis.

103.    Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to the following:

    a. Whether Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

    b. Whether Defendants' security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

    c. Whether Defendants' failure to institute adequate protective security measures amounted to negligence;

    d. Whether Defendants failed to take commercially reasonable steps to safeguard patient Private Information; and

e.   Whether adherence to FTC and HIPAA data security requirements and/or industry

standard data security measures would have reasonably prevented the Data Breach.

104.   Finally, all members of the proposed Class are readily ascertainable. Defendants

have access to Class Members' names and addresses affected by the Data Breach.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE/NEGLIGENCE *PER SE*
**(On Behalf of Plaintiff and the Class)**

105.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 104 above

as if fully set forth herein.

106.   Defendants required Plaintiff and Class Members to submit private, confidential

Private Information to Defendants as a condition of receiving healthcare services from Defendants.

107.   Plaintiff and Class Members provided sensitive  Private Information to Defendants.

108.   Defendants had full knowledge of the sensitivity of the Private Information to

which they were entrusted, and the types of harm that Plaintiff and Class Members could and

would suffer if the Private Information was wrongfully disclosed to unauthorized persons.

Defendants had a duty to Plaintiff and each Class Member to exercise reasonable care in holding,

safeguarding, and protecting their Private Information.

109.   Plaintiff and Class Members were the foreseeable victims of any inadequate safety

and security practices by Defendants.

110.   Plaintiff and the Class Members had no ability to protect their Private Information

in Defendants' possession.

111.   By collecting and storing Plaintiff's and Class Members' Private Information in

their network systems, Defendants had a duty of care to use reasonable means to secure and

safeguard it, to prevent disclosure of the information, and to safeguard the Private Information from theft. Defendants' duty included a responsibility to implement processes by which they could detect if that Private Information was exposed to unauthorized actors and to give prompt notice to those affected in the case of a data breach.

112.    Defendants owed a duty to Plaintiff and the Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the Private Information.

113.    Defendants' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants and their patients, which is recognized by laws and regulations including but not limited to the FTC Act and HIPAA, as well as by the common law. Defendants were able to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a cybersecurity event like this Data Breach, whereas Plaintiff and Class Members were not.

114.    Defendants' duty also arose from their position as a healthcare provider. Defendants hold themselves out as trusted providers of medical services and electronic medical record recorders and thereby assumes a duty to reasonably protect their patients' Private Information. Indeed, Defendants, as healthcare providers and electronic health records recorders, were in a unique and superior position to protect against the harm suffered by Plaintiff and Class Members due to the Data Breach.

115.    Defendants had a duty to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable

measures to protect confidential data.

116.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendants had a duty to provide adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

117.    Pursuant to HIPAA, 42 U.S.C. § 1302d *et seq.*, Defendants had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' Private Information.

118.    Pursuant to HIPAA, Defendants had a duty to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key." *See* 45 C.F.R. § 164.304.

119.    Additionally, pursuant to HIPAA, Defendants had a duty to provide notice of the Data Breach within 60 days of discovering it. *See* 42 C.F.R. § 2.16(b); 45 C.F.R. § 164.404(b).

120.    Defendants breached their duties to Plaintiff and Class Members under the FTC Act and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information, by failing to encrypt or timely delete the Private Information from their network systems, and by failing to provide notice to Plaintiff and Class Members of the Data Breach until over 60 days after Defendants discovered it.

121.    Defendants' violation of the statutes described herein directly caused and/or were a substantial factor in the Data Breach and resulting injuries to Plaintiff and Class Members.

122.    Plaintiff and Class Members are within the class of persons the FTC Act and HIPAA were intended to protect.

123.    The type of harm that resulted from the Data Breach was the type of harm the FTC Act and HIPAA were intended to guard against.

124.    Defendants' failure to comply with the FTC Act and HIPAA constitutes negligence *per se.*

125.    Defendants' duty to use reasonable care in protecting Plaintiff's and Class Members' Private Information in their possession arose not only as a result of the statutes and regulations described above, but also because Defendants are bound by industry standards to secure such Private Information.

126.    Defendants breached their duties and were negligent by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

    a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information;

    b.    Failing to adequately train employees on proper cybersecurity protocols;

    c.    Failing to adequately monitor the security of their networks and systems;

    d.    Failure to periodically ensure that their network system had plans in place to maintain reasonable data security safeguards;

    e.    Allowing unauthorized access to Plaintiff's and Class Members' Private Information; and

    f.    Failing to timely notify Plaintiff and Class Members about the Data Breach so they could take appropriate steps to mitigate their damages.

127.    But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and Class Members, the Data Breach would not have occurred or at least would have been

mitigated, Plaintiff's and Class Members' Private Information would not have been compromised, and Plaintiff and Class Members' injuries would have been avoided.

128.    It was foreseeable that Defendants' failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would injure Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable to Defendants given the known high frequency of cyber-attacks and data breaches in the healthcare industry.

129.    It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' Private Information would cause them one or more types of injuries.

130.    As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have suffered and will suffer injuries and damages, including but not limited to (a) invasion of privacy; (b) lost or diminished value of their Private Information; (c) actual identity theft and fraud; (d) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (e) loss of benefit of the bargain; and (f) the continued and certainly increased risk to their Private Information, which (i) remains unencrypted and available for unauthorized third parties to access and abuse; and (ii) remains in Defendants' possession and subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect it.

131.    As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injuries and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

132.    Plaintiff and Class Members are entitled to damages, including compensatory, and nominal damages, in an amount to be proven at trial.

133.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to (a) strengthen their data security systems and monitoring procedures; (b) submit to future annual audits of those systems and monitoring procedures; and (c) continue to provide adequate credit monitoring to all Class Members.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

134.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 104 above as if fully set forth herein.

135.    Defendants required Plaintiff and Class Members to provide and entrust their Private Information to Defendants as a condition of and in exchange for receiving healthcare services from Defendants.

136.    When Plaintiff and Class Members provided their Private Information to Defendants, they entered into implied contracts with Defendants pursuant to which Defendants agreed to safeguard and protect such Private Information and to timely and accurately notify Plaintiff and Class Members if and when their Private Information was breached and compromised.

137.    Specifically, Plaintiff and Class Members entered into valid and enforceable implied contracts with Defendants when they agreed to provide their Private Information to Defendants in exchange for Defendants' reasonable security for Plaintiff's and Class Members' Private Information.

138.    The valid and enforceable implied contracts that Plaintiff and Class Members entered into with Defendants included Defendants' promises to protect Private Information they collected from Plaintiff and Class Members, or created on their own, from unauthorized

disclosures. Plaintiff and Class Members provided this Private Information in reliance on Defendants' promises.

139.    Under the implied contracts, Defendants promised and were obligated to (a) provide healthcare services; and (b) protect Plaintiff's and Class Members' Private Information provided to obtain such services and/or created in connection therewith. In exchange, Plaintiff and Class Members agreed to provide Defendants with payment and their Private Information.

140.    Defendants promised and warranted to Plaintiff and Class Members that they would maintain the privacy and confidentiality of the Private Information they collected from Plaintiff and Class Members and to keep such information safeguarded against unauthorized access and disclosure.

141.    Defendants' adequate protection of Plaintiff's and Class Members' Private Information was a material aspect of these implied contracts with Defendants.

142.    Defendants solicited and invited Plaintiff and Class Members to provide their Private Information as part of Defendants' regular business practices. Plaintiff and Class Members accepted Defendants' offers and provided their Private Information to Defendants.

143.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendants' data security practices complied with industry standards and relevant laws and regulations, including the FTC Act and HIPAA, as well as industry standards.

144.    Plaintiff and Class Members who contracted with Defendants for healthcare services including reasonable data protection and provided their Private Information to Defendants reasonably believed and expected that Defendants would adequately employ adequate data security to protect that Private Information.

145.    A meeting of the minds occurred when Plaintiff and Class Members agreed to, and did, provide their Private Information to Defendants and agreed Defendants would receive payment for, amongst other things, the protection of their Private Information.

146.    Plaintiff and Class Members performed their obligations under the contracts when they provided their Private Information and/or payment to Defendants.

147.    Defendants materially breached their contractual obligations to protect the Private Information they required Plaintiff and Class Members to provide when that Private Information was unauthorizedly disclosed in the Data Breach due to Defendants' inadequate data security measures and procedures.

148.    Defendants further materially breached their contractual obligations, including the implied covenant of good faith and fair dealing, when they failed to promptly notify Plaintiff and Class Members of the Data Breach.

149.    Defendants materially breached the terms of their implied contracts, including but not limited to by failing to comply with industry standards or the standards of conduct embodied in statutes or regulations like Section 5 of the FTC Act and HIPAA, by failing to otherwise protect Plaintiff's and Class Members' Private Information, as set forth *supra*.

150.    The Data Breach was a reasonably foreseeable consequence of Defendants' breaches of these implied contracts with Plaintiff and Class Members.

151.    As a result of Defendants' failures to fulfill the data security protections promised in these contracts, Plaintiff and Class Members did not receive the full benefit of their bargains with Defendants and instead received services of a diminished value compared to that described in the implied contracts. Plaintiff and Class Members were therefore damaged in an amount at least equal to the difference in the value of the services with data security protection they paid for

and that which they received.

152.    Had Defendants disclosed that their data security procedures were inadequate or that they did not adhere to industry standards for cybersecurity, neither Plaintiff, Class Members, nor any reasonable person would have contracted with Defendants.

153.    Plaintiff and Class Members would not have provided and entrusted their Private Information to Defendants in the absence of the implied contracts between them and Defendants.

154.    As a direct and proximate result of Defendants' breach of their implied contracts with Plaintiff and Class Members and the attendant Data Breach, Plaintiff and Class Members have suffered injuries and damages as set forth herein and have been irreparably harmed, as well as suffering and the loss of the benefit of the bargain they struck with Defendants.

155.    Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

**COUNT III**
**INVASION OF PRIVACY/INSTRUSION UPON SECLUSION**
**(On behalf of Plaintiff and the Class)**

156.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 104 above as if fully set forth herein.

157.    Plaintiff and Class Members had a legitimate expectation of privacy to their Private Information and were entitled to Defendants' protection of this Private Information in their possession against disclosure to unauthorized third parties.

158.    Defendants owed a duty to their patients, including Plaintiff and Class Members, to keep their Private Information confidential and secure.

159.    Defendants failed to protect Plaintiff's and Class Members' Private Information and instead exposed it to unauthorized persons.

160.    Defendants allowed unauthorized third parties access to and examination of the Private Information of Plaintiff and Class Members, by way of Defendants' failure to protect the Private Information through reasonable data security measures.

161.    The unauthorized release to, custody of, and examination by unauthorized third parties of the Private Information of Plaintiff and Class Members is highly offensive to a reasonable person and represents an intrusion upon Plaintiff's and Class Members' seclusion as well as a public disclosure of private facts.

162.    The intrusion was into a place or thing, which was private and is entitled to be private—sensitive and confidential information including private medical diagnoses and laboratory test results.

163.    Plaintiff and Class Members disclosed their Private Information to Defendants as a condition of and in exchange for receiving healthcare services, but privately with an intention that the Private Information would be kept confidential and protected from unauthorized disclosure. Plaintiff and Class Members reasonably believed such information would be kept private and would not be disclosed without their authorization, given Defendants' promises to that effect.

164.    Subsequent to the intrusion, Defendants permitted Plaintiff's and Class Members' data to be published online to countless cybercriminals whose mission is to misuse such information, including through identity theft and extortion.

165.    The Data Breach constitutes an intentional or reckless interference by Defendants with Plaintiff's and Class Members' interests in solitude or seclusion, as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

166.    Defendants acted with a knowing state of mind when they permitted the Data Breach to occur, because they had actual knowledge that their information security practices were

inadequate and insufficient to protect Plaintiff's and Class Members' Private Information from unauthorized disclosure.

167.    Defendants acted with reckless disregard for Plaintiff's and Class Members' privacy when they allowed improper access to their systems containing Plaintiff's and Class Members' Private Information without protecting said data from the unauthorized disclosure or even encrypting such information.

168.    Defendants were aware of the potential of a data breach and failed to adequately safeguard their network systems or implement appropriate policies to prevent the unauthorized release of Plaintiff's and Class Members' Private Information to cybercriminals.

169.    Because Defendants acted with this knowing state of mind, they had noticed and knew that their inadequate and insufficient information security practices would cause injury and harm to Plaintiff and Class Members.

170.    As a direct and proximate result of Defendants' acts and omissions set forth above, Plaintiff's and Class Members' Private Information was disclosed to third parties without authorization, causing Plaintiff and Class Members to suffer injuries and damages including, without limitation, (a) invasion of privacy; (b) lost or diminished value of their Private Information; (c) out-of-pocket and lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (d) loss of benefit of the bargain; and (e) the continued and certainly increased risk to their Private Information, which remains in Defendants' possession in unencrypted form and subject to further unauthorized disclosures, so long as Defendants fails to undertake appropriate and adequate measures to protect it.

171.    Unless and until enjoined and restrained by order of this Court, Defendants'

wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the Private Information maintained by Defendants can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

172.    Plaintiff re-alleges and incorporates by reference herein all the allegations contained in paragraphs 1 through 171 above, as if fully set forth herein.

173.    Plaintiff and Class Members conferred a direct benefit on Defendants by way of providing payment and their confidential and sensitive Private Information to Defendants as part of Defendants' business.

174.    Defendants required Plaintiff's and Class Members' Private Information to conduct their business and generate revenue, which they could not do without collecting and maintaining Plaintiff's and Class Members' Private Information.

175.    The monies Plaintiff and Class Members paid to Defendants included a premium for Defendants' cybersecurity obligations and were supposed to be used by Defendants, in part, to pay for the administrative and other costs of providing reasonable data security and protection for Plaintiff's and Class Members' Private Information.

176.    Defendants benefitted from collecting and using Plaintiff's and Class Members' Private Information, using it to generate revenue and market their services.

177.    Defendants enriched themselves by hoarding the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information.

Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendants calculated to increase their own profit at the expense of Plaintiff and Class Members by utilizing cheap, ineffective security measures and diverting those funds to their own personal use. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' decision to prioritize their own profits over the requisite security and the safety of their Private Information.

178.    Defendants failed to provide reasonable security, safeguards, and protections to the Private Information of Plaintiff and Class Members, and as a result, Defendants were overpaid.

179.    Under principles of equity and good conscience, Defendants should not be permitted to retain the money Plaintiff and Class Members paid them because Defendants failed to provide adequate safeguards and security measures to protect Plaintiff's and Class Members' Private Information, which Plaintiff and Class Members paid for but did not receive.

180.    Defendants wrongfully accepted and retained these benefits—payment and Plaintiff's and Class Members' Private Information—and was enriched to the detriment of Plaintiff and Class Members.

181.    Defendants' enrichment at Plaintiff's and Class Members' expense is unjust.

182.    As a result of Defendants' wrongful conduct and resulting unjust enrichment, Plaintiff and Class Members are entitled to restitution and disgorgement of profits, benefits, and other compensation obtained by Defendants, plus reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment as follows:

A.    An Order certifying this case as a class action on behalf of Plaintiff and the

proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.      Awarding Plaintiff and the Class damages that include applicable compensatory, actual, exemplary, and punitive damages, as allowed by law;

C.      Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

D.      Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

E.      Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

F.      Awarding attorneys' fees and costs, as allowed by law,

G.      Awarding prejudgment and post-judgment interest, as provided by law;

H.      Granting Plaintiff and the Class leave to amend this complaint to request punitive damages, if appropriate, and/or to conform to the evidence produced at trial; and,

I.      Any and all such relief to which Plaintiff and the Class are entitled.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: February 4, 2026                    Respectfully submitted,

By:      */s/Zachary E. Howerton*
Zachary E. Howerton (Bar No. 20688)
**MILBERG, PLLC**
223 Duke of Gloucester Street
Annapolis, MD 21401
Telephone: (410) 269-6620
Facsimile: (410) 269-1235
zhowerton@milberg.com

Mariya Weekes (*pro hac vice* forthcoming)
**MILBERG, PLLC**
333 SE 2nd Avenue, Suite 2000
Miami, FL 33131
Tel: (786) 206-9057
Email: mweekes@milberg.com

*Attorneys for Plaintiff and the Putative Class*